**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

FRANK M. PECK ,

     Plaintiff,

v.

NEVADA DEPARTMENT OF
CORRECTIONS, et al.,

     Defendants.

2:12-cv-00898-JCM-NJK

**REPORT & RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE**

Before the Court is Defendants' Motion to Enforce Settlement Agreement (#36).  The Court has reviewed Defendants' Motion (#36), Plaintiff's Response (#37), Defendants' Reply (#38), and the recording of the Early Mediation Conference held on January 4, 2013 (#26). The Court finds that this motion is properly resolved without oral argument. *See* Local Rule 78-2.

## I.  BACKGROUND

**A.     Procedural Background**

On December 5, 2011, Plaintiff filed his civil rights Complaint in Nevada state court. *See* Complaint, Docket No. 1-2. On May 25, 2013, Defendants removed the case to the District of Nevada. *See* Petition for Removal, Docket No. 1. Thereafter, the Court screened Plaintiff's amended Complaint and dismissed the Nevada Department of Corrections, and Plaintiff's First and Fourth Amendment claims with prejudice. *See* Screening Order, Docket No. 21.

On October 29, 2013, the Court set an Early Inmate Mediation Conference before Mediator J. Michael McGroarty. *See* Order Setting Mediation, Docket No. 24. The mediation occurred on January 4, 2013, and lasted for approximately three hours. *See* Minutes of Proceedings, Docket No. 26. At the mediation, the parties reached an agreement and, after some

1  discussion, placed the terms of the settlement on the record. *Id*. Mediator J. Michael McGroaty
2  advised Plaintiff that, within 10 days, the deputy attorney general would prepare a written
3  settlement agreement for the parties to sign. *Id*.

4      On January 10, 2013, Plaintiff was provided with the written settlement agreement.
5  Plaintiff is presently refusing to sign the settlement agreement on the grounds that he was
6  coerced into settlement, was not given an opportunity to read the prepared agreement, and does
7  not agree to all of the terms in the agreement. *See* Response to Motion, Docket No. 37.

8  **B.   Mediation Conference**

9      Present for the mediation conference were Mediator J. Michael McGroaty, Plaintiff Frank
10  Peck (via video teleconference), Deputy Attorney General Kelly Smith, and Sheryl Foster,
11  Deputy Director for Nevada Department of Corrections. Docket No. 26. The mediation started at
12  approximately 9:20 a.m. and by approximately 11:55 a.m., the parties indicated that they had
13  reached an agreement. *Id*. They went on the record with the Mediator to memorialize the terms of
14  the agreement. *Id*.

15      The Mediator began by stating that it was very important for the parties to understand the
16  terms of the agreement. *Id*. He explained that once the terms were placed on the record, the
17  agreement was binding and legally enforceable. *Id*. Additionally, he noted that the parties could
18  ask any questions and should ask for clarification if there was something they did not understand.
19  *Id*.

20      The Mediator then asked the parties if they understood that they were entering into a
21  binding settlement agreement. *Id*. Both parties said they understood. *Id*. The Mediator explained
22  that, although the deputy attorney general would prepare a written agreement with the settlement
23  terms, the terms that would be placed on the record would have a binding effect and the writing
24  was simply a formality. *Id*. He asked if the parties understood that and, again, both parties said
25  they did. Plaintiff noted, however, that the terms had not yet been read on the record. *Id*.

26      The Mediator placed the terms on the record as follows: the parties agreed to resolve this
27  matter for (1) a $100 payment to Plaintiff, which would be deposited into his "Trust II" account
28  and would not be touchable for restitution purposes; and (2) the removal of Plaintiff's department

charges which were approximately $10.50 as of the date of the conference, according to inmate services. *Id*. The Mediator noted that the written agreement would contain these terms as well as "standard language that is used in settlement agreements." *Id*.

Before asking the parties if they agreed to those terms, the Mediator again explained that the agreement would be binding regardless of whether Plaintiff signed the subsequent written agreement or not. *Id*. To further this point, the Mediator stated that if, for example, a party refused to sign the written agreement because they changed their mind after the settlement conference, the opposing side could still ask the court to enforce the recorded agreement and it would be binding. *Id*. The Mediator noted that the written agreement would be prepared within 10 days and that, at that time, Plaintiff should sign it and send it back. *Id*. The Mediator then asked Plaintiff if he understood, and the Plaintiff indicated that he did. *Id*.

Next, the Mediator reiterated the terms of the agreement and asked Plaintiff if he voluntarily agreed. *Id*. Plaintiff hesitated and then indicated that agreeing to the terms of the agreement would be "against [his] better judgment." *Id*. The Mediator asked if there were any other terms of the settlement that Plaintiff would like to include on the record. *Id*. Plaintiff said there were not. *Id*. The Mediator asked if there were any "hidden promises" on the side. *Id*. Plaintiff said there were not. *Id*. Nevertheless, Plaintiff stated that he "can't do this" and could not agree to settle his case for $100. *Id*. He said, "there's just no way in the world I can do this. I'm sorry." *Id*.

At that point, the Mediator informed Plaintiff that if Plaintiff did not settle the case, he would be responsible for the $350 filing fee. *Id*. Plaintiff corrected the Mediator and said that since the Defendants removed the case to Federal Court, they are responsible for the filing fee. *Id*. The Mediator asked Defendants if that was true. *Id*. Defendants stated that they if they won their case, they could still ask the Court for costs, which would include the $350 filing fee. *Id*. Additionally, Defendants stated that was precisely what they intended to do via a Motion for Summary Judgment, which they believed would be granted  because they viewed the case as frivolous. *Id*. The Mediator then explained to Plaintiff that "in certain circumstances" he might be responsible for the $350 fee. *Id*. Plaintiff disputed whether he would in fact ever have to pay it

1   and the Mediator indicated that was a dispute which would have to be argued at another time if

2   the case did not settle. *Id*.

3       At that point the Mediator again asked Plaintiff if he would like to settle. *Id*. Plaintiff

4   again stated that he did not think he should settle the case for $100. *Id*. The Mediator said that

5   was entirely Plaintiff's choice. *Id*. Plaintiff stated that he now felt that he should "roll the dice"

6   and not settle. *Id*.

7       The Mediator then reminded Plaintiff that the deputy attorney general had already

8   informed Plaintiff of what her next step would be if the case did not settle. *Id*. The deputy

9   attorney general again stated that she would move for summary judgement and eventually seek

10   costs. *Id*.

11       The Mediator then asked Plaintiff in "one last attempt" if he would like to settle, noting

12   that Plaintiff had "at one point" agreed to the terms. Before the Mediator could complete his

13   statement, however, Plaintiff interrupted and said "let's do it" and "let's get on with this." *Id*. The

14   Mediator then asked "Okay, so you had your second thoughts and now you've had second

15   thoughts again and you are agreeing to the terms?" Plaintiff said "yes, now let's get on with this

16   before I change my mind again." *Id*.

17       The Mediator asked Plaintiff one final time if he understood that the terms were binding

18   and Plaintiff said he understood. *Id*. Plaintiff then asked for clarification as to whether his $100

19   would be deposited into his Trust II account so that those funds would not be subject to

20   withdrawal for restitution payments. *Id*. The Mediator and Defendants confirmed that would be

21   the case. *Id*.

22   **II.   DISCUSSION**

23   **A.   Legal Standard**

24       The court has inherent authority under federal law to enforce a settlement agreement in an

25   action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987); *TNT Marketing, Inc.*

26   *v. Agresti*, 796 F.2d 276, 278 (9th Cir.1986) (citations omitted)*; see also Marks–Foreman v.*

27   *Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D.Cal.1998) (citations omitted). Assent to an

28   agreement in open court constitutes a binding agreement to settle. *Henderson v. Yard House*

1  *Glendale, LLC*, 456 F. App'x 701, 702 (9th Cir. 2011); citing  *Doi v. Halekulani Corp.*, 276 F.3d

2  1131, 1137-8, 1140 (9th Cir.2002).

3          A settlement agreement must meet two requirements to be enforced.  *Fernandez v.*

4  *Nevada*, 2012 WL 960907 (D. Nev. Feb. 9, 2012) *report and recommendation adopted,* 2012

5  WL 960619 (D. Nev. Mar. 20, 2012). First, it must be a complete agreement. *Id. c*iting *Callie*,

6  829 F.2d at 890. Second, both parties or their authorized attorneys must agree to the terms of the

7  settlement. *Id.* citing *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir.1977).

8  Where material facts concerning the terms or existence of settlement agreement are disputed, the

9  parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890.

10  **B.      Analysis**

11          1.      Evidentiary Hearing

12          Where material facts concerning the terms or existence of settlement agreement are

13  disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890. However, the

14  Court may decide to not hold a hearing if neither party requests or indicates that a hearing is

15  necessary to settle disputed material facts. *Bank of the W. v. Great Falls Ltd. P'ship*, 2011 WL

16  5102244, *2 (D. Nev. Oct. 25, 2011).

17          Here, neither party has requested an evidentiary hearing. Additionally, the material terms

18  of the agreement were clearly stated by Mediator J. Michael McGroaty for the record. According

19  to the terms put on the record in open court, Plaintiff agreed to dismiss his claims against the

20  Defendants in exchange for (1) a $100 payment to Plaintiff, which would be deposited into his

21  "Trust II" account and would not be touchable for restitution purposes; and (2) the removal of

22  Plaintiff's department charges which were approximately $10.50 as of the date of the conference.

23  Accordingly, because the material facts of the agreement are clear and neither party has requested

24  an evidentiary hearing, the undersigned Magistrate Judge recommends that the Court decline to

25  hold such a hearing.

26          2.      Enforcement of Settlement Agreement

27          Plaintiff has set forth a series of objections to the settlement agreement, none of which

28  justifies non-enforcement.

1    First, Plaintiff asserts that the deputy attorney general stated that Plaintiff would be

2    responsible for the $350 filing fee if he did not settle. Docket No. 37, at 2. The Court has listened

3    to the recording of the proceedings and has determined that Plaintiff's assertion is not accurate.

4    Docket No. 26. The deputy attorney general stated that she would *seek* costs, including the $350

5    filing fee, because she strongly believed the case was frivolous and that she would win. *Id*.

6    Thereafter, the Mediator explained that the deputy attorney general was revealing her litigation

7    strategy and any arguments concerning whether Plaintiff would have to pay the filing fee would

8    have to wait for another time, if the case did not settle. *Id*. The record is clear that Plaintiff was

9    well aware that he would not have had to pay the filing fee simply for declining to settle his case.

10   *Id*.

11   Second, Plaintiff asserts that the Mediator gained his trust and told him that his case was

12   not likely to succeed on the merits. Docket No. 37, at 2. This, however, is not an unexpected part

13   of the mediation process. Mediators are neutral third parties with no interest in the outcome of

14   the litigation. Therefore, mediators can be trusted to offer an unbiased evaluation of the case.

15   Indeed, the Order setting the mediation conference made clear that the Mediator would meet

16   separately and speak directly to the parties to discuss the case. Docket No. 24, at 8. Further, it

17   states that during those discussions, the parties should be prepared to consider the value of the

18   case from the opposition's point of view and be prepared to discuss different viewpoints. *Id*. If,

19   as Plaintiff asserts, the Mediator believed Plaintiff's case would not succeed, then the Mediator

20   was permitted to share that perspective with Plaintiff.

21   Third, Plaintiff asserts that the deputy attorney general stated that a letter from Plaintiff's

22   attorney on "her"[1] letterhead was not a legal document. Docket No. 37, at 2. The Court has no

23   further information about what letter Plaintiff is referring to and, regardless, whether a particular

24   letter is a legal document or not has no bearing on the outcome of this motion.

25   Fourth, Plaintiff asserts that the Mediator told Plaintiff that if he settled, it would "go a

26   long way in showing that [Plaintiff] could be reasonable." *Id*. The Court finds nothing

27   _____

28   [1]It is unclear whether Plaintiff is referring to a letter on the deputy attorney general's
letterhead or Plaintiff's attorney's letterhead.

1   objectionable about this alleged representation.

2        Fifth, Plaintiff asserts that he was ordered to sign the settlement agreement prior to being

3 allowed to read it. *Id*. at 3. Additionally, Plaintiff states that there are terms in the written

4 agreement that he does not agree with. *Id*. Based on Plaintiff's representations, it is apparent that

5 Plaintiff has had an opportunity to read the agreement as of the date of his Response, because he

6 has asserted that he does not agree with certain terms. Further, the Court has reviewed the written

7 agreement and finds that it correctly reflects the settlement that the parties agreed upon in open

8 court. *See* Docket No. 36-3.

9        Sixth, Plaintiff asserts that he only agreed "reluctantly" because "of the fraud committed

10 by the Defendants' Attorney and the non-neutral mediator." Docket No. 37, at 3. The Court has

11 reviewed the recording in which Plaintiff agreed to the terms of the settlement and finds no

12 instances of fraud. Docket No. 26. Additionally, as explained above, although the Mediator may

13 have believed that Plaintiff's case was of little to no value, that does not indicate that the

14 Mediator was not neutral. Concerning Plaintiff's reluctance, Plaintiff had approximately three

15 hours to discuss his case and, after lengthy discussion, agreed to put the terms of a settlement on

16 the record in open court. *Id*. Then, after the Mediator made it abundantly clear what Plaintiff was

17 agreeing to, did Plaintiff agreed to the discussed terms. *Id*. Further, Plaintiff indicated that he

18 understood the terms in their entirety. *Id*. He even asked for clarification in order to ensure that

19 he would get precisely what he was promised - $100 in his Trust II account. Therefore, although

20 Plaintiff did express that he was having second thoughts about the agreement, he ultimately and

21 unambiguously agreed to the terms. *Id*.

22        Seventh, Plaintiff asserts that the mediation was a "collaboration and collusion" and not a

23 mediation at all. Docket No. 37, at 3. In an effort to address this concern, the Court reviewed the

24 recording of the settlement agreement, but found no evidence of the alleged "collaboration and

25 collusion." Docket No. 26.

26  . . .

27  . . .

28  . . .

1    Eighth, Plaintiff asserts that he was deceived about the law and facts surrounding this

2    case. Docket No. 37, at 4. However, Plaintiff has not pointed to any instances in which this

3    actually occurred[2] and, accordingly, the Court finds there to be no merit to this argument.

4    Ninth, Plaintiff argues that he is at a disadvantage in this litigation because he has not

5    been given access to this Court's Order in *Pavon v. UPS*, 2013 WL 3367567 (D. Nev. July 5,

6    2013). Docket No. 37, at 4. Defendants do not rely on that Order in their motion and, having

7    reviewed that Order, the Court finds that Plaintiff's lack of access to that case is of no

8    consequence. The law cited in *Pavon v. UPS* is available in other case law and, additionally, the

9    Court finds that it does not support any of Plaintiff's arguments.

10    Plaintiff's tenth and twelfth arguments are the same as his eighth, Docket No. 37, at 4-5,

11    and the Court reaches the same conclusion.

12    Finally, the Court takes note of Plaintiff's assertion that he has arthritis, which prevents

13    him from writing a longer brief. *Id*. at 5. In accordance with Ninth Circuit precedent, the Court

14    has construed Plaintiff's pleadings liberally and has afforded him the benefit of any doubt. *See*

15    *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (*citing Bretz v. Kelman,* 773 F.2d 1026, 1027

16    n. 1 (9th Cir.1985) (*en banc*)).

17    The Court finds that none of Plaintiff's assertions justifies non-enforcement of the

18    settlement agreement. The parties reached a complete agreement and both parties voluntarily

19    agreed to the terms in open court. Accordingly, the undersigned Magistrate Judge recommends

20    that the Court, through its inherent authority under federal law to enforce a settlement agreement

21    in an action pending before it, enforce the settlement agreement that the parties entered into in

22    open court before Mediator J. Michael McGroaty. *See Callie*, 829 F.2d at 890.  The agreement

23    requires Plaintiff to dismiss his claims against the Defendants in exchange for (1) a $100

24    payment to Plaintiff, which would be deposited into his "Trust II" account and would not be

25

26    [2]At no point in Plaintiff's Response does he explain how he was deceived concerning the
facts of this case. The only confusion relating to the law related to the $350 filing fee, which the

27    Mediator explained would have to be addressed at another time if the case did not settle.
Additionally, if Plaintiff is referring to the Mediator's evaluation of the case, as discussed above, that

28    evaluation was not improper.

touchable for restitution purposes; and (2) the removal of Plaintiff's department charges as of the date of the settlement, which were approximately $10.50.

### III.   RECOMMENDATION

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that Defendants' Motion to Enforce Settlement Agreement (#36) **be GRANTED.**

DATED this __27th__ day of September, 2013

_____
NANCY J. KOPPE
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule IB 3-2 [former LR 510-2] any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986).  This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).